# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| VERONICA L. HEIGHT, | : | |
| Plaintiff, | : | |
| v. | : | No. 5:09-CV-422 (CAR) |
| PERDUE FARMS INCORPORATED, | : | |
| Defendant. | : | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matters comes before the Court on Defendant Perdue Farms Inc.'s ("Perdue") Motion for Summary Judgment. [Doc. 17]. In this case, Plaintiff Veronica L. Height ("Height") alleges that Perdue discriminated against her on the basis of her race and national origin and retaliated against her because she reported that she was sexually harassed by her supervisor, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. On November 15, 2010, Perdue moved for summary judgment. Height has not opposed the motion. Having duly considered the matter, the Court concludes that based on the undisputed material facts, Perdue is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment [Doc. 17] is **GRANTED**.

I. Summary Judgment Standard

Motions for summary judgment in federal courts are governed by the Federal Rules of Civil Procedure. Summary judgment must be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986); Johnson v. Clifton, 74 F.3d

1

1087, 1090 (11th Cir.1996). Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097 (2000). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation marks omitted).

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir.1991). Ultimately, summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex, 477 U.S. at 323.

Local Rule 56 imposes requirements on the parties regarding identifying factual issues in the case. It provides that the respondent "shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried." M.D. Ga. L.R. 56. In this case, Height has not filed a response to Perdue's motion for summary judgment. Likewise, she has also not filed a statement of facts to which she contends there is a genuine issue of fact. Failure to file the statement of material facts carries consequences. "All material facts contained in the moving party's statement which are not specifically controverted . . . shall be deemed to have been admitted, unless otherwise inappropriate." Id. Accordingly, all facts stated in Perdue's Statement of Material Facts [Doc. 19] that are supported by citations to the record are deemed admitted. The factual background set forth below will be taken from that statement of material facts.

Even if, as here, a motion for summary judgment is unopposed, a district court cannot base its decision on the mere fact that the motion is unopposed; rather, the court must still consider the merits of the motion. United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.., 363 F.3d 1099, 1101 (11th Cir. 2004). Although the well-supported facts in Perdue's statement of material facts are deemed admitted in this case, the court must still "ensure that the motion itself is supported by evidentiary materials." Id. "At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment." Id. at 1101-02. In order to facilitate effect review of the case on appeal, "the district court's order granting summary judgment must 'indicate that the merits of the motion were addressed.'" Id. at 1102 (quoting Dunlap v. Transamerica Occidental Life Ins. Co., 858 F.2d 629, 632 (11th Cir. 1988)).

II. Statement of Undisputed Material Facts

Plaintiff Height is an African-America female born in Dublin, Georgia. She worked for

Defendant Perdue as a General Laborer, Front End of the Line, from April 2006 until she was terminated on March 26, 2008.

Perdue has an Equal Employment Opportunity Policy that ensures that every employee is treated impartially without regard to race, color, religion, sex, age, marital status, national origin, disability, or any other category protected by law. In addition, Perdue has a Harassment Prevention Policy prohibiting any type of job related harassment. Perdue also has a Sexual Harassment Policy. The Sexual Harassment Policy is laid out in the Employee Handbook and Personnel Policies and Procedures. The Sexual Harassment Policy states that in support of the Equal Employment Opportunity Policy, it expressly prohibits sexual and any other form of unlawful harassment of associates. The Sexual Harassment Policy provides that Human Resources will investigate any complaint, and if the investigation indicates that harassment has occurred, disciplinary action, up to and including termination, will be taken against the offending party. In addition to the Sexual Harassment Policy, Perdue maintains a separate policy regarding Sexual Harassment that dictates the procedure for a prompt and thorough investigation following a complaint.

Height acknowledged receipt and understanding of the Employee Handbook on April 26, 2006. She also acknowledged receipt of the Perdue Harassment Prevention Policy as stated in the Handbook. Height recognized the key policies of employee relations from the Handbook and acknowledged that these policies dictate the actions an employee should take if she feels that she has experienced job related harassment. Height also understood that an employee who feels that she has been the target of harassment should promptly report the matter to the Human Resources Department.

In 2008, Perdue issued a Policy Refresher to its employees concerning five issues: (1)

leaving workstations without permission, (2) clocking out, (3) job rotation, (4) performance expectations, and (5) zero harassment tolerance. On February 11, 2008, Height signed the Policy Refresher. At that time, she handwrote a note that the job rotation procedure was not being enforced, but made no statement regarding the Zero Tolerance Harassment Policy.

The sequence of events giving rise to Height's eventual termination began on March 18, 2008. During a meeting that day, Height asked her supervisor, Dom Leon ("Leon"), why she had not been trained on the Perdue Business Improvement Board ("the Board"). Following the meeting, Leon asked Curtis Stewart ("Stewart") why Height had not been trained. Stewart served as a line lead and was also Height's boyfriend. Stewart told Leon that Ms. Ashley Pauldo ("Pauldo") was responsible for training on the Board. When Leon approached Pauldo, she informed him that she had attempted to train Height several times, but Stewart had prevented it. At that point, Height entered the conversation, which then escalated to a verbal confrontation between Height and Pauldo.

Later that day, Leon made a report to Human Resources regarding the altercation between Height and Pauldo. Complex Human Resources Manager Maria Rivera ("Rivera") assigned Human Resources Representative Laura Greco ("Greco") to investigate the altercation. During Greco's interview with Pauldo, Pauldo informed her that she had attempted to train Height on the Board several times, but Stewart always told her that Height was busy and to train someone else. Pauldo told Greco that Stewart gave Height special treatment, including allowing her to work whenever she wanted and not having to fill in for others on the line. Pauldo also told Greco that Stewart often made physical, sexual contact with Height, including slapping her on the behind while on the production line. In the process of the investigation, several other employees volunteered information to Greco regarding Height and Stewart engaging in offensive

5

and inappropriate workplace behavior.

In light of the statements made by Pauldo and other employees, the focus of the investigation turned from the altercation between Height and Pauldo to the alleged inappropriate behavior between Height and Stewart. In order to determine whether Height or Stewart had violated the Sexual Harassment Policy, Unit Manager Lawrence Wade interviewed Stewart, and Greco interviewed Height and several other witnesses.

Greco's interviews lead to multiple complaints about inappropriate behavior between Height and Stewart. One employee stated that Stewart touched Height in a sexual nature on the production line the previous week and that similar conduct happened often. Another employee that worked in Height's area stated that Height and Stewart touched in a sexual nature while on the production floor near the oven next to the fryer. That employee also saw Height and Stewart in a locker room together. When the employee questioned what they were doing, Height responded, "Just kissing." A third employee saw Stewart slap Height on the behind and make physical contact with Height from behind often while on the line. Another saw Stewart and Height touching and rubbing one another in a sexual manner.

On March 20, 2008, Height was notified that she was suspended from employment because her behavior with Stewart violated Perdue's harassment policies. During the suspension meeting, Height stated that she had never been touched inappropriately by another employee at the plant and that she had never touched anyone inappropriately. After being informed of her suspension, Height accused Leon, her supervisor, of sexual harassment. Because of that accusation, Perdue requested that Height make a handwritten complaint of the allegations. In her complaint, Height alleged that Leon harassed her on March 13, 2008 by making sexual slurs, licking his tongue at her, whispering, and dancing. The March 20 complaint is the only

complaint Height ever made to Human Resources against Leon. Although Height claims that she reported to Human Resources in November 2007 that Leon was showing favoritism to Pauldo, her November 2007 complaint does not mention Leon. Instead, the complaint states that Linda Morris, a line lead, was showing favoritism to some employees.

Following Height's March 20 allegations against Leon, Greco initiated a second sexual harassment investigation. Greco interviewed each employee mentioned in Height's complaint. Every employee interviewed stated they had not witnessed any inappropriate conduct or comments from Leon toward Height or any other employee. Human Resources was unable to find any evidence of harassment by Leon.

Turning back to the investigation of Stewart and Height, Human Resources determined that sufficient evidence supported the complaints that Stewart and Height engaged in inappropriate behavior of a sexual nature while at work, which caused other employees in the production area to feel uncomfortable. Human Resources determined that both Height and Stewart would be terminated for violation of company rules. On March 26, 2008, Height was notified of her termination from the Perdue Cook Plant for violating company rules.

On May 6, 2008, Height filed a Charge of Discrimination with the Equal Employment Opportunity Commission. In her Charge, Height indicated that she was the subject of race discrimination and retaliation. She did not indicate that she had been subjected to national origin discrimination at that time.

On December 8, 2009, Height filed a pro se complaint.[1] In her complaint, Height alleged that she was discriminated against because of her race and her national origin. She claimed that

---

[1] Height retained counsel before the close of the discovery period.

Perdue did not provide her with the same training that white employees received. She also alleged that Perdue retaliated against her because she complained to Human Resources in November 2007 that she was sexually harassed by supervisor.

III. Discussion

A. Race Discrimination Under Title VII

Claims of racial discrimination based on circumstantial evidence are evaluated under the burden shifting framework developed in McDonnell Douglas v. Green, 411 U.S. 792 (1973). "To establish a prima facie case for disparate treatment in a race discrimination case, the plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). If the plaintiff can establish those elements, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment action. Id. Once the defendant discharges that burden, the plaintiff must ultimately prove that the articulated reason is a pretext for unlawful discrimination. Id.

Perdue concedes that Height satisfies the first and fourth elements of the prima facie case because she is an African-American and because she is generally qualified to work as a production associate. Perdue also concedes that Height was subjected to an adverse employment action when Perdue terminated her and when it allegedly refused to train her on the Business Improvement Board. Perdue argues, however, that in relation to her termination, Height was not treated less favorably than a similar situated employee outside her protected class. Perdue also contends that it had a legitimate, non-discriminatory reason both for terminating Height and for

8

failing to train her on the Board.

          1.      Termination

Height has failed to establish a prima facie case based on her hiring because she has not produced any evidence indicating that she was treated less favorably than a similarly situated employee outside of her protected class. The burden lies on Height to show that any purported similarly situated employee was involved in or accused of similar conduct and disciplined differently. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). Height's comparators, Linda Morris and Ashley Pauldo, are not similarly situated to Height in this case because neither has ever been accused of violating Perdue's Sexual Harassment Policy. In addition to showing that no similarly situated employee outside of Height's protected class was treated differently, the evidence also shows that Height was replaced by another African-American female. See Denney v. City of Albany, 247 F.3d 1172, 1183 (11th Cir. 2001) (to establish prima facie case based on termination, plaintiff must establish that she is a member of a protected class, was qualified for the position, was terminated, and was replaced by someone outside her protected class).

Moreover, even assuming that Height established a prima facie case based on her termination, Perdue has put forth a legitimate, non-discriminatory reason for her termination. Perdue asserts that Height was fired for violating the Sexual Harassment Policy. Height has failed to put forth any facts indicating that Perdue's reason for firing her was untrue or otherwise pretext for unlawful discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (in order to show that proffered reason is pretext for discrimination, plaintiff must demonstrate both that the reason was false and that discrimination was the real reason).

Because Height has failed to establish a prima facie case based on her termination and

because Perdue has put forth a legitimate, non-discriminatory reason for firing her, which Height has not controverted, Height's claim that she was terminated based on her race fails.

    2.  Failure to Train on the Board

Height has failed to establish that Perdue's legitimate, non-discriminatory reason for failing to train her on the Board was a pretext for unlawful discrimination.

Perdue concedes that Height has established a prima facie case based on its failure to train her on the Board. Because Perdue has conceded the point, the Court expresses no opinion on whether the failure to train Height on the Board constitutes a sufficiently adverse employment action to establish a claim for intentional discrimination under Title VII.

Perdue argues that it had a legitimate, non-discriminatory reason for failing to train Height on the Board. The undisputed evidence shows that Pauldo attempted to train Height on the Board several times, but Stewart always told Pauldo that Height was busy and that she should train someone else. To the extent that Height challenged this reason as being false during her deposition, she claimed that Pauldo failed to train her because of personal reasons, particularly that Pauldo feared that Height would perform better on the Board. Assuming that was true, Height has only challenged the truthfulness of Pauldo's explanation. She has failed, however, to produce any evidence indicating that the allegedly false reason was pretext for unlawful discrimination. See Hicks, 509 U.S. at 515.

Because she has failed to introduce any evidence showing that Perdue's legitimate, non-discriminatory reason was pretext for unlawful discrimination, Height's claim that Perdue failed to train her based on her race fails.

  B.  <u>National Origin Discrimination</u>

Height's claim that Perdue discriminated against her based on her national origin fails for

a number of reasons.

First, Height did not raise a national origin discrimination claim in her EEOC charge. The permissible scope of a judicial complaint alleging employment discrimination is dictated by the claims raised in a timely-filed EEOC charge. A.M. Alexander v. Fulton County, Ga., 207 F.3d 1303, 1332 (11th Cir. 2000), overruled on other grounds by Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003). A court must determine whether the allegations in the judicial complaint were like or related to, or grew out of, the allegations in the EEOC charge. Gregory v. Ga. Dep't Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004). In her EEOC charge, Height clearly stated that she was discriminated against on the basis of race. National origin was never mentioned. Because Height failed to exhaust any national origin claim in her EEOC charge, any such claim is barred.

Second, Height's claim of national origin discrimination is not based on national origin at all. In her deposition, Height stated that she believed her Christian religion and recreational Bible reading during breaks lead to her national origin discrimination. Height's religious beliefs and reading habits have nothing to do with whether she was born in the United States, nor could they demonstrate that she was discriminated against because she was born in the United States.

Third, even assuming that Height somehow established a prima facie case of national origin discrimination, Perdue articulated a legitimate, non-discriminatory reason both for terminating her and for failing to train her on the Board. As with her race discrimination claims, Height has failed to come forward with any evidence that would establish that those reasons were pretext for unlawful discrimination.

    C.    Retaliation Under Title VII

"To establish a claim of retaliation under Title VII . . . , a plaintiff must prove that [s]he

11

engaged in statutorily protected activity, [s]he suffered a materially adverse action, and there was some causal relation between the two events." Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir.2008). "After the plaintiff has established the elements of a claim, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability." Id. "The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct." Id.

Perdue concedes that Height meets the first and second elements of the prima facie case of retaliation because she engaged in statutorily protected activity when she lodged a complaint against Leon after being informed of her suspension and because she was terminated. Perdue argues, however, that Height has failed to establish the necessary causal connection for the prima facie case, and that it had a legitimate, non-retaliatory reason for firing her.

In this case, the Court will assume that Height has established the necessary causal connection to support a prima facie case. In a Title VII retaliation case, the court should construe the causal connection element broadly; thus, a plaintiff need only demonstrate that the protected activity and adverse action are not completely unrelated. Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004). Close temporal proximity between the protected activity and the adverse action may be sufficient to create a genuine issue of fact as to the causal connection. Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000). Here, Height lodged her complaint against Leon on March 20, 2008. Perdue then terminated her on March 26, 2008. That Height's termination followed within a week of her protected activity is likely sufficient to establish the necessary causal connection for her prima facie case.

In spite of that however, Height's retaliation claim still fails. Perdue contends that it

terminated Height because she violated the Sexual Harassment Policy. As with her racial discrimination claim, Height has failed to establish that Perdue's legitimate, non-retaliatory reason was false and that Perdue was actually motivated by retaliatory animus. See Hicks, 509 U.S. at 515.

### D. Failure to Promote

Before concluding, the Court notes that Perdue addresses a failure to promote claim in its motion for summary judgment. Height's complaint, however, fails to even raise a failure to promote claim. Height clearly alleges that Perdue discriminated against her because it both failed to train her and terminated her based on race and national origin, and that it retaliated against her for lodging a sexual harassment complaint against Leon. The complaint never mentions a failure to promote claim, nor has Height ever requested leave to amend her complaint to assert such a claim. To the degree that such a claim may have appeared during discovery, the Court will not consider it for the first time on summary judgment.

## IV. Conclusion

As set forth above, based on the undisputed material facts, Perdue is entitled to judgment as a matter of law. Height failed both to establish a prima facie case of race discrimination based on her termination and to rebut Perdue's legitimate, non-discriminatory reason for firing her. Height also failed to rebut Perdue's legitimate, non-discriminatory reason for failing to train her on the Board. Height failed to properly raise her claim that Perdue terminated her based on national origin in her EEOC charge. Had she raised that claim, however, it would fail for the same reason as her race discrimination claim. Finally, as to her retaliation claim, Height failed to rebut Perdue's legitimate, non-retaliatory reason for terminating her. Accordingly, Defendant's Motion for Summary Judgment [Doc. 17] is **GRANTED**.

SO ORDERED this 25th day of February, 2011.


S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT


bcw